

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DANNY ELLIS KEE and | § | Case No. 04-62254 |
| JEANNE RUTH KEE | § | |
| | § | |
| Debtors | § | Chapter 13 |

| | | |
|---|---|---|
| DANNY ELLIS KEE and | § | |
| JEANNE RUTH KEE | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 05-6020 |
| | § | |
| TEXAS BANK | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Now before the Court in the above-referenced adversary proceeding is the

Complaint to Determine Secured Status of Texas Bank filed by Danny Ellis Kee and

Jeanne Ruth Kee ("Plaintiffs"), the Debtors in the underlying bankruptcy case.  On March

10, 2006, a trial was held on this matter, after which the Court took the matter under

advisement.  These findings of fact and conclusions of law dispose of all issues pending

in this adversary proceeding.  For the reasons stated below, the Court finds that Texas

Bank, the Defendant in the above-referenced adversary proceeding, holds a secured claim

---

[1]  These findings and conclusions are not designated for publication and shall not be considered
as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the
case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

in the amount of $18,337.66, which is secured by the 7.262 acres which constituted the

Debtor-Plaintiffs' original homestead.  The Court finds that the remainder of Texas

Bank's claim is unsecured.[2]

## Findings of Fact

### *The 7.2 Acre Tract*

1.      On July 16, 1996, Danny Ellis Kee and Jeanne R. Kee (the "Debtors"), who are
        husband and wife, executed a Mechanic's Lien Note (the "Mechanic's Note")
        payable to Kenneth Kee in the original principal amount of $20,000.00.

2.      On July 16, 1996, the Plaintiffs executed a Mechanic's Lien Contract (the
        "Contract") with Kenneth Kee to construct a 40' x 96' greenhouse and mixing
        room and dig a deep water well on 7.262 acres located in a rural section of
        Cherokee County, Texas (the "7.2 Acre Tract") and more fully described in the
        Contract.

3.      The 7.2 Acre Tract constituted the Plaintiffs' homestead upon its purchase when
        they occupied it the improvements placed upon it as their home.

4.      The Mechanic's Note and Contract were assigned to Texas Bank (the "Bank") on
        July 16, 1996.

5.      The Mechanic's Contract and assignment were recorded at Volume 1311, Pages
        782-787 in the Official Records of Cherokee County, Texas on July 25, 1996.

6.      On April 17, 1997, Plaintiffs executed a Real Estate Lien Note (the "April 1997
        Note") payable to the Bank in the amount of $20,000.00 for the purpose of
        constructing improvements upon the 7.2 Acre Tract.[3]

7.      In order to secure repayment of the April 1997 Note, the Plaintiffs executed a

---

[2]  This Court has jurisdiction to consider the objection pursuant to 28 U.S.C. §1334 and 28
U.S.C. §157(a).  The Court has the authority to enter a final judgment in this adversary proceeding since
it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A),(B), (K) and (O).

[3]  Ex. P-5 at pp. 16-18.

Deed of Trust dated April 17, 1997, granting to the Bank a deed of trust lien in the 7.2 Acre Tract.[4]

8.      The April 1997 Note was given to renew and extend the unpaid balance of the Mechanic's Note in the amount of $20,000.00.

9.      The Mechanic's Lien was renewed and extended by the April 17, 1997 Deed of Trust.

10.     The April 17, 1997 Deed of Trust was recorded on April 21, 1997 at Volume 1339, Pages 74-79 of the Official Records of Cherokee County, Texas.

11.     On April 13, 2001, the Plaintiffs executed an Extension of Real Estate Lien Note and Lien (the "April 2001 Note and Lien") renewing the unpaid balance of the April 1997 Note in the amount of $17,310.42.

12.     The April 2001 Note and Lien was recorded on April 18, 2001 in Volume 1495 at Pages 832-834 of the Official Records of Cherokee County, Texas.

13.     The entire unpaid balance of the April 2001 Note, including principal, interest and attorneys fees, is secured by the mechanic's lien and the April 17, 1997 Deed of Trust.[5]

*The 8.5 Acre Tract*

14.     On December 20, 1999,  the Plaintiffs executed a Real Estate Lien Note (the "December 1999 Note") in the original amount of $10,000.00 payable to the Bank.[6]

15.     On December 20, 1999,  Plaintiffs executed a Deed of Trust granting the Bank a deed of trust lien in 8.5 acres located in a rural area of Cherokee County, Texas (the "8.5 Acre Tract") and more fully described in the Deed of Trust.[7]

---

[4]  *Id.* at pp. 19-24.

[5]  See *infra* finding of fact #53 and note 25 accompanying.

[6]  Ex. P-5 at pp. 25-26; *Joint Pre-Trial Order* (dkt. # 20) at p. 3, ¶ 9.

[7]  Defendant's Ex. A.

16.    The December 1999 Note and the December 20, 1999 Deed of Trust were given to secure money advanced by the Bank as a part of the purchase price for the 8.5 Acre Tract.

17.    The 8.5 Acre Tract is contiguous to the Plaintiffs' 7.2 Acre Tract[8] and no fence or other obstruction separates the two tracts in any way.

18.    The two combined tracts form a joint rectangular tract of real property consisting of approximately 15.7 acres.

19.    The Bank conducted no inspection of the 8.5 Acre Tract in relation to the December, 1999 transaction.

20.    Despite its knowledge of the contiguous nature of the 8.5 Acre Tract to the 7.2 Acre Tract, which the Bank admitted was impressed with a homestead character, the Bank did not request the execution of any homestead declaration from the Plaintiffs in December 1999.

21.    The December 20, 1999 Deed of Trust was recorded on December 28, 1999 at Volume 1447, Pages 295-300 of the Official Records of Cherokee County, Texas.

22.    The December 20, 1999 Deed of Trust on the 8.5 Acre Tract expressly provides that the "conveyance is also made to secure repayment of all other present and future debts" that the Plaintiffs may owe to the Bank.[9]

23.    The December 20, 1999 Deed of Trust also states that the "Deed of Trust will remain fully in effect to secure future advances and debts" until the Bank releases it.[10]

24.    On October 31, 2001 the Plaintiffs executed a note payable to the Bank in the original principal amount of $50,150.45 (the "October 2001 Note").[11]

---

[8]   *Joint Pre-Trial Order* (dkt. # 20) at p. 2, ¶ 3

[9]   *Joint Pre-Trial Order* (dkt. # 20) at p. 3, ¶ 10.

[10]   *Id.*

[11]   Ex. P-5 at pp. 13-15; *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 13.

-4-

25.   Plaintiffs executed an exhibit attached to the October 31, 2001 note which acknowledged that they had cross-pledged the 8.5 Acre Tract to secure the note.[12]

26.   The October 2001 Note and accompanying documentation was drafted by the Bank.

27.   The Plaintiffs did not elect to retain counsel to review the documentation prepared by the Bank for the proposed transaction in October 2001.

28.   The Bank conducted no inspection of the 8.5 Acre Tract in relation to the October 2001 transaction and, despite its knowledge of the contiguous nature of the 8.5 Acre Tract to the 7.2 Acre Tract which the Bank admitted was impressed with a homestead character, the Bank did not request the execution of a homestead declaration from the Plaintiffs in October 2001.

29.   As a part of the October 2001 transaction, the Plaintiffs tendered a financial statement to the Bank.

30.   Plaintiffs' executed financial statement listed the 8.5 acre tract as "Other Wholly-Owned R[eal] E[state]" on a line item separate from their homestead.[13]

31.   At the time of the execution of the October 2001 Note, only a small balance remained on the December 1999 Note.[14]

32.   The December 1999 Note has now been paid in full by the Plaintiffs.[15]

33.   Though the December 1999 Note has been satisfied, the Bank has not released the December 20, 1999 Deed of Trust.[16]

---

[12]   Ex. P-5 at pp. 13-15; *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 13.

[13]   Defendant's Ex. B.

[14]   *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 12.

[15]   *Id.*

[16]   *Id.*

34.     The October 31, 2001 note was renewed a number of times until it was finally renewed by a Universal Note and Security Agreement dated July 8, 2004 in the original principal amount of $56,229.13 ("the July 2004 Note").[17]

35.     No portion of the July 2004 Note represented funds intended to be applied toward the purchase price, or the improvement of, either the 7.2 Acre Tract or the 8.5 Acre Tract. Such loan proceeds were instead advanced by the Bank, and were in fact utilized by the Plaintiffs, solely for the enhancement of the Plaintiffs' nursery business located in Whitehouse, Texas.[18]

36.     The Plaintiffs executed an exhibit to the July 8, 2004 renewal under which they purport to acknowledge that the 8.5 Acre Tract is cross-pledged to secure the payment of the July 2004 Note.[19]

37.     However, that same exhibit also purports to document the existence of a lien in favor of the Bank against the 7.2 Acre Tract as a cross-pledge to secure the payment of the July 2004 Note. Such is true even though the Bank has at all times purportedly recognized the 7.2 Acre Tract as the Plaintiffs' homestead.

38.     The July 2004 Note, and all exhibits and other accompanying documentation, were drafted by the Bank.

39.     The Plaintiffs did not elect to retain counsel to review the documentation prepared by the Bank for the proposed transaction in July 2004.

40.     Thus, the documents as drafted clearly evidence an intent by the Bank to take, or to at least convince the Plaintiffs that it had taken, a lien which would clearly be void under Texas law.

41.     The Bank now acknowledges that the language in the exhibit is erroneous and it could not have taken a valid lien on the 7.2 Acre Tract admittedly constituting homestead property to cross-collateralize the payment of the July 2004 Note, though it refuses to make the same acknowledgment regarding the 8.5 Acre

---

[17]  Ex. P-5 at pp. 5-10; *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 13.

[18]  *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 16.

[19]  Ex. P-5 at p. 10; *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 13.

-6-

Tract.[20]

42.    The Bank conducted no inspection of the 8.5 Acre Tract in relation to the July 2004 transaction.

43.    Despite its knowledge of the contiguous nature of the 8.5 Acre Tract to the 7.2 Acre Tract which the Bank admitted was impressed with a homestead character, the Bank did not request the execution of a homestead declaration from the Plaintiffs in July 2004.

44.    On October 25, 2004, the Plaintiffs filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

45.    The Plaintiffs' "Schedule C - Property Claimed As Exempt" claimed the two tracts [7.2 Acre Tract and the 8.5 Acre Tract] as their homestead.[21]  No objections were filed to the Plaintiffs' claims of exemption.[22]

46.    On December 9, 2004, a meeting of creditors was conducted in the Plaintiffs' Chapter 13 case pursuant to §341 of the Bankruptcy Code.

47.    At the 341 Meeting, counsel for the Bank questioned Ms. Kee as to her family's use of the 8.5 Acre Tract.[23]  Contrary to the argument of the Bank, the answers provided by Ms. Kee, as revealed by the 341 transcript, are not truly contradictory to the Plaintiffs' current assertion of a homestead interest in the 8.5 Acre Tract.

48.    Despite their involvement in business activities, the Court finds that the Debtors are not well-educated, sophisticated business people with broad knowledge of the legal issues surrounding the creation of a homestead under Texas law.

49.    Though the Bank's counsel skillfully framed and phrased primarily leading questions at the 341 meeting regarding the acquisition and use of the two tracts of land with obvious knowledge of the Bank's precarious legal position vis-a-vis the

---

[20]   *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 19.

[21]   *Joint Pre-Trial Order* (dkt. # 20) at p. 4, ¶ 17.

[22]   *Id.* at p. 4, ¶ 18.

[23]   *See* Defendant's Ex. E.

-7-

absolute protection offered by the Texas homestead exemption, Ms. Kee's explanation that she thought, in light of the questions regarding the greenhouse operations, that the Bank's counsel was attempting to inquire about the commercial use of the 8.5 Acre Tract, is both plausible, credible and persuasive.[24]

50.   At trial, the Plaintiffs supplemented what Ms. Kee reasonably believed to have been the limited scope of the Bank's questions at the 341 meeting by testifying, without any sort of factual contradiction from the Bank, that, since the acquisition of the 8.5 Acre Tract, they have utilized the joint 15.7 acres as one comprehensive homesite which they and their son have utilized for recreational uses such as camping and riding motorcycles, for animal husbandry purposes at various times, and from which they have occasionally cut firewood for personal use and gathered pine straw to create mulch for their greenhouses.

51.   Though it may be a fair characterization that the Plaintiffs may not have always understood the purpose for which questions regarding their use of the 8.5 Acre Tract were being asked, the Plaintiffs intended, from the time they acquired the 8.5 Acre Tract, for the tract to be utilized as, and incorporated into, their existing homestead.

52.   The Plaintiffs never intended to waive their homestead claim to the 8.5 Acre Tract by signing documentation pertaining to the October 2001 Note or the July 2004 Note.

53.   At the time of the filing of the bankruptcy petition on October 25, 2004, Plaintiffs owed to the Bank the sum of $18,337.66 on the April 2001 Note, consisting of the principal amount of $15,517.14,[25] plus accrued pre-petition interest in the amount of $722.94, and post-petition attorneys' fees and expenses in the amount of $2,097.58 [$2,077.00 in accrued fees and related expenses of $20.58] which relate solely to the legal services rendered on behalf of the Bank by McNally & Patrick, L.L.P. pertaining to the defense of the April 2001 Note and Lien.

54.   Legal services were required to be rendered by McNally & Patrick, LLP for the Bank's benefit as to the 7.2 Acre Tract during the pendency of the Plaintiffs'

---

[24]   When the questioning began to turn to more recreational uses, such as references to woods or fishing holes on the 8.5 Acre Tract, the answers led the inquiry back into a commercial, or income-related, direction pertaining to the cutting of timber.

[25]   The principal balance of the April 2001 Note has been determined by the agreement of the parties under the *Joint Pre-Trial Order* (dkt. # 20) at p. 3, ¶ 7.

bankruptcy case since the Plaintiffs consistently sought to confirm a plan which identified the Bank's claim secured by the 7.2 Acre Tract in an amount less than that asserted by the Bank.[26]

55.   The Plaintiffs' Third Amended Plan was confirmed by an order entered on August 22, 2005.[27]

## Conclusions of Law

1.   "If used for the purposes of a rural home, the homestead shall consist of...for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon."  TEX. PROP. CODE ANN. §41.002(b) (Vernon 2000).

2.   In order to impress property with the homestead character the property must be used for the purposes of a rural home and the owner must intend to claim the

---

[26]   In the initial Chapter 13 plan filed by the Plaintiffs, they proposed to pay a secured claim of $17,500.00 to the Banks in satisfaction of the lien on the 7.2 Acre Tract and otherwise proposed that all other property securing any claim of the Bank should be abandoned to the Bank in full satisfaction of its claim.  See Defendant's Ex. C.  In their First Amended Chapter 13 Plan, the Plaintiffs proposed to pay a secured claim of $15,517.14 to the Bank in satisfaction of the lien on the 7.2 Acre Tract and otherwise proposed that all other property securing any claim of the Bank should be abandoned to the Bank in full satisfaction of its claim.  See *First Amended Chapter 13 Plan* filed on March 15, 2005 (dkt #57).  In their Second Amended Chapter 13 Plan and in the Third Amended Chapter 13 Plan, which was ultimately confirmed, the Plaintiffs proposed to pay a secured claim of $15,517.14 to the Banks in satisfaction of the lien on "16 Acres"  and otherwise proposed that all other property securing any claim of the Bank "other than the lien on the Debtors' homestead which includes the 16 acres, more or less" should be abandoned to the Bank in full satisfaction of its claim.   See *Second Amended Chapter 13 Plan* filed on April 20, 2005 (dkt #76) and Exhibit P-2.

[27]   Though the terms of the Third Amended Plan continued to challenge the validity of the amount of the Bank's claim asserted against the 7.2 Acre Tract, in order to allow confirmation to proceed pending the determination of issues raised in this adversary proceeding, the parties agreed to the insertion of the following protective language into the confirmation order entered on August 22, 2005:

> Nothing contained in this section shall prejudice in any way the claim of Texas Bank by determining the value of its collateral or the amount of its allowed secured claim, furthermore, nothing contained in this section shall extinguish or invalidate Texas Bank's secured lien until its allowed secured claim has been paid and the Debtors have been granted a discharge.

Ex. P-1 at p. 3.

property as a homestead.  *McFarlane v. First Nat'l Bank of Orange Texas*, 97 S.W.2d 754 (Tex. Civ. App.–Beaumont 1936, writ ref'd); *Roberson v. Home Owners' Loan Corp.*, 147 S.W.2d 949 (Tex. Civ. App.–Dallas 1941, writ dism'd judgm't cor.);  *Prince v. North State Bank of Amarillo,* 484 S.W.2d 405, 409 (Tex. Civ. App.–Amarillo 1972, writ ref'd n.r.e.).

3.      "The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the [limited]  types of constitutionally permitted liens against homesteads."  *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex., 1992).

4.      A rural homestead may consist of more than one tract of land.  TEX. PROP. CODE ANN. §41.002(b) (Vernon 2000).

5.      There is a presumption that a tract of land that is contiguous with the tract occupied by a residence is also used for the purposes of a home.  *Paine Webber Inc. v. Murray,*  260 B.R. 815 (Bankr. E.D. Tex. 2001).  However, the presumption that a contiguous tract is also a part of the rural homestead is not conclusive.  *See McDonald v. Clark,* 19 S.W. 1023 (Tex. 1892).

6.      "The acquisition of unimproved property with the intention of its becoming homestead, followed in a reasonable time by acts evidencing that intention and the subsequent actual use and occupancy of the property as a homestead, impresses the homestead character upon the property from the moment of its acquisition." *Harkrider-Keith-Cooke Co. v. Smith*, 284 S. W. 612, 614 (Tex. Civ. App.–Austin 1926, no writ).

7.      "As a general rule, we think, the law is that if one owning a present homestead purchases contiguous lots, so as to enlarge the area of his home place, with the intention that they shall become a part of his homestead, they will be so considered, unless they are put to some use inconsistent with the homestead use, and under such circumstances as evince a purpose that they were not acquired to be used in connection with the home, but for some use inconsistent with, and independent of, it."  *Little v. Baker*, 26 S.W. 305, 305 (Tex. Civ. App. 1894, no writ).

8.      The Texas Constitution does not permit the affixing of a lien upon a homestead except for purchase money, home improvement, taxes, and the codified home

equity loan.[28]

9.  Though the December 20, 1999 Deed of Trust granted to Texas Bank on the 8.5 Acre Tract purportedly covered future advances and debts owed by the Debtors to the Bank, if the 8.5 Acre Tract was subject to the homestead protections at acquisition, such a clause would be void because it would constitute a lien on homestead property for a purpose other than those limited proper purposes set out in the Texas Constitution and the Texas Property Code. TEX CONST. art. XVI, § 50; TEX. PROP. CODE ANN. §41.002(b) (Vernon 2000)*; Stephens v. FDIC (In re Stephens)*, 149 B.R. 414, 418 (Bankr. E.D. Tex. 1992) ["[T]he debtor could no more have encumbered her homestead through a nonpurchase money deed of trust than she could have encumbered her neighbor's property.].

10. Because the 8.5 Acre Tract was contiguous with the 7.2 Acre Tract, which was occupied as a residence as of December 20, 1999 and constituted the Plaintiffs' homestead, a presumption arises that the contiguous 8.5 Acre Tract was used for the purposes of the home.

11. Supported by that presumption which has not been rebutted, the evidence presented is sufficient to sustain the Plaintiffs' burden to demonstrate that they have used the 8.5 Acre Tract "for the purpose of a home" and that such tract of real property is within the scope of the Debtors' rural homestead exemption.

12. "The validity of [a] lien depend[s] upon the status of the land as respecting homestead rights, that existed at the time the pretended lien was created. Persons dealing with homestead rights must take notice of matters that will thus impress the lands with such rights." *Hayes v. First Trust Joint Stock Land Bank of Chicago*, 111 S.W.2d 1172, 1177 (Tex. Civ. App.–Fort Worth 1937, writ dism'd) [internal citations omitted].

13. Thus, the Court concludes that the 8.5 Acre Tract was impressed with homestead character from the time of its acquisition, and the clause in the December 20, 1999 Deed of Trust purportedly securing future advances against the property was void at that time.

14. Once the purchase money loan on the 8.5 Acre Tract was fully paid, a short time after the October 31, 2001 Note was executed, the December 20, 1999 Deed of Trust should have been properly released by Texas Bank.

---

[28] *Joint Pre-Trial Order* (dkt. #20) at p. 4, ¶ 1.

15.    Purported cross pledges of the 8.5 Acre Tract for the benefit of Texas Bank in connection with the October 2001 Note and the July 2004 Note are rendered void and unenforceable by the homestead protections afforded under art. XVI, sec. 50 of the Texas Constitution and Chapter 41 of the Texas Property Code.

16.    Therefore, it is determined that Texas Bank holds a secured claim of $18,337.66 against the Plaintiff-Debtors, Danny E. and Jeanne R. Kee, secured by a valid and enforceable lien against the Plaintiff-Debtors' 7.2 Acre Tract arising from the Extension of Real Estate Lien Note and Lien dated April 13, 2001, and such lien constitutes a security interest in real property that is the debtors' principal residence.

17.    The lien asserted by the Defendant, Texas Bank, as to the Plaintiff-Debtors' 8.5 Acre Tract in Cherokee County, Texas, arising from the December 20, 1999 Deed of Trust, recorded on December 28, 1999 at Volume 1447, Pages 295-300 of the Official Records of Cherokee County, Texas, is hereby extinguished and released due to the payment of all indebtedness which such lien rightfully secured.

18.    Any other lien asserted by the Defendant, Texas Bank, as to the Plaintiff-Debtors' 8.5 Acre Tract in Cherokee County, Texas, is hereby declared null and void under the Constitution and laws of the State of Texas.

19.    All other claims held or asserted by Texas Bank against the Plaintiff-Debtors, Danny E. and Jeanne R. Kee, constitute general unsecured claims.

Signed on 06/12/2006

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

-12-